UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DONALD BATISTE | CIVIL ACTION NO. 6:14-cv-03045 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| QUALITY CONSTRUCTION & PRODUCTION LLC, ET AL. | BY CONSENT OF THE PARTIES |

## **MEMORANDUM RULING**

Pending before this Court is the motion for summary judgment that was filed by defendant Alliance Offshore L.L.C. (Rec. Doc. 82). The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

## **Background**

The plaintiff, Donald Batiste, claims that he was injured on October 26, 2013 while standing on the deck of a vessel and engaged in the task of backloading the vessel from an offshore platform. It is undisputed that a three-year prescriptive period applied to his claim and expired on October 26, 2016, before the plaintiff's claim against Alliance was filed. The issue to be decided is whether the claim against Alliance relates back to the filing of the original complaint.

In his original complaint, the plaintiff asserted negligence claims against three defendants, Quality Construction and Production, LLC, Helmerich & Payne

International Drilling Company, and Arena Energy. (Rec. Doc. 1).[1] The plaintiff alleged that the platform was owned by Arena, that Arena leased the vessel, that H&P owned the oil rig on the platform, and that H&P operated the crane used to transfer cargo and equipment between the platform and the vessel. The plaintiff further alleged that Arena was responsible for keeping the vessel steady and for maintaining a safe environment on the vessel during transfers.

Based on information allegedly obtained during discovery (Rec. Doc. 87 at 5), the plaintiff filed his first supplemental and amending complaint in August 2015, asserting negligence claims against WDS Global Partners, LLC, RCI Consultants, Inc., and Kilgore Offshore, Inc. (Rec. Doc. 44). In the amended complaint, the plaintiff alleged that Arena and/or WDS and/or RCI and/or Kilgore were responsible for keeping the vessel steady during transfers, keeping the vessel's deck clear from hazards, and providing a safe work environment. The plaintiff also alleged that Kilgore had a contract with Arena that required Kilgore to operate the vessel, supervise the transfer of material baskets and equipment from the platform to the vessel and the placement of those objects on the vessel's deck, keep the vessel's deck clear of hazards, and provide a safe environment for work aboard the vessel. The plaintiff further alleged that the vessel's captain was employed by Kilgore.

---

[1] The claim against Quality Construction was dismissed voluntarily. (Rec. Doc. 8).

Kilgore did not answer the complaint or appear in the lawsuit. However, counsel for Kilgore participated in a telephone status conference with the court in October 2016 and indicated that another party should be substituted for it in the litigation. (Rec. Doc. 53). The plaintiff contends that, about two weeks later, Kilgore produced a brokerage agreement between Kilgore and Alliance, indicating that Alliance was actually operating the vessel at the time of the plaintiff's alleged accident and injury. (Rec. Doc. 87 at 6). The plaintiff filed a second supplemental and amending complaint a month later, seeking to substitute Alliance for Kilgore. (Rec. Doc. 60).

Alliance answered the complaint and argued that the plaintiff's claim against it was barred by the applicable statute of limitations. (Rec. Doc. 75). Alliance also asserted a cross-claim against Arena. In the cross-claim, Alliance asserted that the M/V NICHOLAS C was working for Arena under a Master Time Charter Agreement between Arena (as charterer) and Kilgore (as owner), and also asserted that Alliance was the demise owner and operator of the vessel while "Kilgore was the broker for the vessel acting on behalf of Alliance." (Rec. Doc. 75 at 8).

In support of the instant motion, Alliance argued that the plaintiff's claims against it should be dismissed because the second supplemental and amending

complaint was filed after the prescriptive period elapsed and the claim asserted against it does not relate back to the original complaint that initiated this lawsuit.

## Analysis

A.   **The Summary-Judgment Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[2] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[3]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[4] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[3] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[4] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

existence of a genuine issue of a material fact.[5] All facts and inferences are construed in the light most favorable to the nonmoving party.[6]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[7] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[8]

B.   **Preliminary Factual Issue**

Before reaching the issue of whether the plaintiff's claim against Alliance relates back, there is a preliminary factual issue that must be addressed. No evidence was presented in support of or in opposition to Alliance's motion establishing that the M/V NICHOLAS C was actually being operated by Alliance at the time of the plaintiff's alleged accident.

---

[5] *Washburn v. Harvey*, 504 F.3d at 508.

[6] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[7] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[8] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

The original complaint alleged that Arena "leased the vessel" (Rec. Doc. 1 at 2) but neither the vessel, its owner, or its operator was identified. The first supplemental and amending complaint similarly referred to a vessel but did not identify it; however, the plaintiff did allege that Kilgore contracted with Arena for "operating the vessel" (Rec. Doc. 44 at 3) and further alleged that the vessel's captain was employed by Kilgore (Rec. Doc. 44 at 4). In the second supplemental and amending complaint, the plaintiff again failed to identify the vessel and made identical allegations regarding Arena's contract for operation of the vessel and the employment of the vessel's captain, simply substituting Alliance for Kilgore. (Rec. Doc. 60 at 3-4).

In its cross-claim against Arena, Alliance identified the M/V NICHOLAS C as the vessel involved in the subject incident and alleged that the vessel was operated by Alliance under a Master Time Charter Agreement between Arena, as charterer, and Kilgore, as owner. (Rec. Doc. 75 at 8). Alliance also alleged that it was "the demise owner and operator of the vessel, and Kilgore was the broker for the vessel acting on behalf of Alliance." (Rec. Doc. 75 at 8).

In support of the instant motion, Alliance submitted a master brokerage agreement between Kilgore and Alliance but no documentary evidence that this agreement pertained to the vessel on which the plaintiff's accident occurred. Along

with his opposition memorandum, the plaintiff submitted a copy of Arena's discovery responses, which identified Kilgore as the owner of the vessel. (Rec. Doc. 87 at 3). The plaintiff also submitted a copy of the Master Time Charter Agreement between Kilgore and Arena (Rec. Doc. 87-4), but it does not refer to any particular vessel.

Although Alliance alleged in its cross-claim that it was operating the M/V NICHOLAS C at the time of the accident at issue, no evidence substantiating that allegation has been placed in the record. Under Fed. R. Civ. P. 56, the party filing a motion for summary judgment and asserting that a fact is not disputed has a duty to support a factual assertion by citing to materials in the record. The dispute between the plaintiff and Alliance with regard to whether the claim against Alliance relates back is actually a significant dispute concerning the identity of the party that was operating the vessel at the time of the plaintiff's alleged accident. Because there is nothing in the record supporting Alliance's factual allegation that it rather than Kilgore was the operator, this Court must conclude that there is a genuinely disputed issue of material fact that precludes summary judgment in Alliance's favor.

Fed. R. Civ. P. 56(e) instructs that, when a party fails to properly support or address a factual allegation, the court may allow the party an additional opportunity to address the fact, consider the fact undisputed, grant summary judgment if otherwise appropriate, or issue any other appropriate order. As explained below, this Court

does not find that Alliance's legal arguments in support of its motion are meritorious; therefore, this Court will not consider the fact undisputed or grant summary judgment in Alliance's favor. Instead, this Court finds that Alliance's failure to prove that it was operating the vessel at the time of the accident is a sufficient basis for denying Alliance's motion.

C.  **Does the Claim Against Alliance Relate Back?**

Fed. R. Civ. P. 15(c)(1)(C) governs the relation back of an amended complaint to the original complaint filed in a lawsuit. The rule reads as follows, in pertinent part:

> An amendment to a pleading relates back to the date of the original pleading when:
> 
> \* \* \*
> 
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied[9] and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> 
> (I) received such notice of the action that it will not be prejudiced in defending on the merits; and
> 
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

---

[9] Rule 15(c)(1)(B) states that an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading. . . ."

In this case, there is no dispute that the claim against Alliance arises out of the same occurrence described in the original complaint. In support of its motion, however, Alliance argued that it was not served within the applicable prescriptive period and had no actual notice, within the time allowed for serving the original complaint, that it would have been sued except for a mistake concerning the proper party's identity.

The goal of the relation-back doctrine set forth in Rule 15(c) is to correct a mistake concerning the identity of a party.[10] The rule "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification."[11] Indeed, the Advisory Committee Notes to the 1991 amendment of Rule 15(c) state that "a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification." As noted above, the parties have not proven what entity was operating the vessel at the time of the accident in question. If Alliance was the operator of the vessel – as it argues – then the plaintiff's substitution of Alliance for Kilgore corrected the plaintiff's earlier misidentification of the vessel owner as Kilgore when the owner actually was Alliance.

---

[10] *Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998).

[11] *Jacobsen v. Osborne*, 133 F.3d at 320 (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469 (2nd Cir. 1995)).

At the time that he filed his first supplemental and amending complaint, the plaintiff attempted to sue the owner of the vessel on which he was allegedly injured. The plaintiff contended that he was presented with documentation stating (a) that Kilgore was the owner of the vessel and (b) that Kilgore had contracted with Arena to provide the vessel to support Arena's platform operations. The plaintiff further contended, however, that he later learned that Kilgore was not the actual owner of the vessel but was instead a broker authorized to enter into time charter agreements on behalf of the actual vessel owner, Alliance. The master time charter agreement that was placed into evidence in this lawsuit (Rec. Doc. 87-4) is a master agreement that does not pertain to a specific vessel but designates Kilgore as the "owner" of vessels and designates Arena as the "charterer" of Kilgore's vessels. It states that Arena may, from time to time, desire to charter vessels from Kilgore and that Kilgore owns various vessels that it may, from time to time, desire to charter to Arena. (Rec. Doc. 87-4 at 1). This agreement does not indicate that Kilgore was merely a broker rather than a vessel owner nor does it indicate that Kilgore would be acting on behalf of Alliance when it entered into more specific time charter agreements with Arena. Therefore, in the master time charter agreement, Kilgore was misidentified as the owner of vessels that Alliance actually owns or operates. Consequently, when the plaintiff asserted a claim against Kilgore in his first supplemental and amending

complaint, he too misidentified the owner or operator of the vessel involved in the subject incident.

In analyzing whether an amended complaint related back, the United States Supreme Court had occasion to examine the definition of the word "mistake." The Court said:

> A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed.2009); see also Webster's Third New International Dictionary 1446 (2002) (defining "mistake" as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts"). That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant – call him party A – exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.[12]

In this case, it is clear that the plaintiff understood Kilgore to be the owner of the vessel involved in the subject incident when, in fact, Alliance may be the vessel's owner. Thus, the plaintiff made a mistake concerning the identity of the vessel's

---

[12] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548-49 (2010).

owner and the role that Kilgore and Alliance played in the events leading to this lawsuit.

However, the more crucial inquiry is not what the plaintiff knew but what the prospective defendant knew or should have known.[13] Although Kilgore did not answer the complaint against it or appear in this lawsuit, counsel for the plaintiff and counsel for Kilgore had discussions concerning the plaintiff's claim against Kilgore before the prescriptive period elapsed. It strains credulity to think that Kilgore did not notify Alliance about a lawsuit involving one of the vessels for which Kilgore had brokered a time charter on Alliance's behalf. While the brokerage agreement that was placed into evidence in this lawsuit is a master agreement that does not pertain to a specific vessel, one would expect Kilgore to maintain and to share with Alliance any and all records concerning the chartering of any of Alliance's vessels. Indeed, the brokerage agreement requires Kilgore to provide Alliance with copies of "all necessary information it receives from its Customer. . . and [Alliance] shall have the right to accept or reject the Charter so offered." Once Alliance has agreed in writing to accept an offer to charter a vessel, Kilgore is authorized to sign the charter agreement on behalf of Alliance. The master time charter agreement that Kilgore and Arena entered into, however, does not indicate that Kilgore is acting on behalf of

---

[13] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. at 548.

Alliance. Instead, Kilgore is designated as "owner" of the vessels being chartered by Arena. Still, one would anticipate that Kilgore, upon having been served with the original and first supplemental and amending complaints, would have endeavored to identify the vessel on which the plaintiff's injury was alleged to have occurred and to notify Alliance that there was a lawsuit concerning one of the vessels that it allegedly operated. Although Alliance denied that Kilgore notified it of the lawsuit and claimed that it did not know about the incident or the suit until it was served with the second supplemental and amending complaint (Rec. Doc. 82-2 at 1), the issue is not just whether Alliance received actual notice but also whether it should have known that it was likely to be sued.

Actual notice to the newly-named party is not necessary for an amended complaint to relate back.[14] An amendment relates back if the newly-added party received such notice that it will not be prejudiced in defending the suit on the merits and knew or should have known that the action would have been brought against it but for a mistake regarding the proper party's identify. This Court finds that Alliance received sufficient notice to preclude its being prejudiced. Although Alliance was not brought into the suit until two years after it was filed, Alliance was not the only party sued at that time and subsequent continuances of the trial date and corresponding

---

[14] *Sanders-Burns v. City Of Plano*, 594 F.3d 366, 374 (5th Cir. 2010).

delays of the discovery deadline and other deadlines thereafter have ensured that all of the parties have had ample opportunity to prepare the case without prejudice to their rights.

With regard to whether Alliance should have known that it was the proper party to the lawsuit, service on a party's agent constitutes constructive notice to the party,[15] since it is a fundamental rule of agency law that notice to the agent constitutes notice to the principal.[16] The plaintiff argued that Kilgore's status as Alliance's agent for the purpose of procuring vessel charters is a sufficient basis for imputing knowledge of the suit to Alliance, while Alliance argued to the contrary.

The Fifth Circuit has also stated it will infer notice if there is an "identity of interest" between the original defendant and the defendant sought to be added or substituted.[17] "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."[18] In some cases,

---

[15] *Sanders-Burns v. City Of Plano*, 594 F.3d at 374 (quoting *Kirk v. Cronvich*, 629 F.2d 404, 405 (5th Cir. 1980)(overruled in part on other grounds as noted by *Honeycutt v. Long*, 861 F.2d 1346, 1352 n. 9 (5th Cir. 1988))).

[16] *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 472 (5th Cir. 2005).

[17] *Jacobsen v. Osborne*, 133 F.3d at 320 (citing *Moore v. Long*, 924 F.2d 586, 588 (5th Cir. 1991); *Kirk v. Cronvich*, 629 F.2d at 407–08)).

[18] *Jacobsen v. Osborne*, 133 F.3d at 320 (citing *Kirk v. Cronvich*, 629 F.2d at 408 n. 4). See, also, *Sanders-Burns v. City Of Plano*, 594 F.3d at 374-75.

notice has been imputed to the new party through shared counsel.[19] In this case, Alliance and Kilgore are not represented by the same counsel. But the relationship between Alliance and Kilgore is such that Alliance should have known about the plaintiff's claim. The United States Supreme Court has instructed that "[t]he only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him."[20] Because Kilgore acted as Alliance's agent in procuring time charters for the vessels that Alliance owned or operated, and because Kilgore executed at least one master time charter agreement showing that it rather than Alliance was the owner of the vessels being chartered, this Court finds that the relationship between Kilgore and Alliance was such that Alliance should have known that, but for a plaintiff's confusion and mistake as to who the actual vessel owner or operator was, a claim that was actually asserted against Kilgore would have been asserted against Alliance instead.

Alliance argues that a contractual relationship by itself is an insufficient basis for imputing knowledge, relying upon a single case from the Eastern District of Louisiana, which in turn relies on a district court case from Hawaii. Thus, there is no

---

[19]  See, e.g., *Barkins v. International Inns, Inc.*, 825 F.2d 905, 907 (5th Cir.1987).

[20]  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. at 549.

Fifth Circuit support for that broad proposition, and this Court is not convinced that the argument has merit. For example, a contract establishing an agency relationship would be a valid basis for imputing one party's knowledge to another. Therefore, this argument is unpersuasive.

Alliance also argued that the failure of Kilgore to be dismissed from the lawsuit is evidence that the plaintiff did not substitute Alliance for Kilgore but simply added another defendant. This Court disagrees. The plaintiff filed an unopposed motion for leave to file a second supplemental and amending complaint. (Rec. Doc. 58). The proposed pleading filed along with the motion stated that the plaintiff "supplements and amends his original complaint to **substitute** the defendant, ALLIANCE OFFSHORE, LLC for the defendant, KILGORE MARINE SERVICES, INC." (Rec. Doc. 58-1 at 1 [emphasis added]). The motion was granted (Rec. Doc. 59), and the proposed pleading was filed in the record as the plaintiff's second supplemental and amending complaint (Rec. Doc. 60). The first supplemental and amending complaint (Rec. Doc. 44) listed five defendants, including Kilgore. The second supplemental and amending complaint also listed five defendants, with Alliance replacing Kilgore. When a plaintiff files an amended complaint, a substitution of defendants occurs without a formal dismissal of a defendant named in a prior iteration of the complaint because an amended complaint totally replaces the prior complaint. In explaining the

difference between amending complaints and supplemental complaints, noted commentators said: "The former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings."[21] Thus, the plaintiff's second supplemental and amending complaint completely replaced the first supplemental and amending complaint and resulted in Alliance being substituted for Kilgore without the necessity for an order dismissing Kilgore from the suit. Alliance's argument that the lack of an order dismissing Kilgore from the suit is dispositive of the relation-back issue lacks merit.

The jurisprudence is clear that relation back under Rule 15(c) is not permitted when the plaintiff simply lacks knowledge of the proper party being added to the suit after the filing of the original complaint.[22] But the plaintiff in this case did not amend his complaint to add a party that he did not know about previously; instead, he amended his complaint to substitute the alleged actual owner or operator of the vessel for the party that he had previously mistakenly believed was the owner or operator

---

[21] § 1504 Supplemental Pleadings – In General, 6A Fed. Prac. & Proc. Civ. § 1504 (3d ed.)

[22] *Jenkins v. Stan Ware Enterprises, Inc.*, No. 06-2217, 2008 WL 4091926, at *5 (W.D. La. Aug. 27, 2008) (citing *Jacobsen v. Osborne*, 133 F.3d at 321).

of the vessel. Because the plaintiff apparently made an error in identifying that party, he should not be prejudiced by his effort to correct his mistake.

## Conclusion

Assuming in the absence of proof that Alliance rather than Kilgore was the operator of the vessel at all material times, (a) the claim against Alliance arises out of the same transaction or occurrence referenced in the original complaint, (b) the plaintiff sued Kilgore in error due to a mistake concerning the identity of the vessel operator, (c) the nature of the relationship between Kilgore and Alliance requires that notice to Kilgore of the plaintiff's claim be imputed to Alliance, (d) there is no evidence that Alliance will be prejudiced by being added to the suit at a late date, and (e) Alliance should have known that the action would have been brought against it but for the mistake concerning the identity of the vessel operator. Accordingly, this Court finds that Alliance has not established that there are no genuinely disputed issues of material fact and further finds that Alliance has not established that it is entitled to judgment in its favor as a matter of law. For these reasons,

IT IS ORDERED that Alliance's motion for summary judgment (Rec. Doc. 82) is DENIED.

Signed at Lafayette, Louisiana on this 21st day of February 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE