UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DONALD BATISTE                    CIVIL ACTION NO. 6:14-cv-03045

VERSUS                            MAGISTRATE JUDGE HANNA

QUALITY CONSTRUCTION &            BY CONSENT OF THE PARTIES
PRODUCTION LLC, ET AL.

## MEMORANDUM RULING

Currently pending is defendant Alliance Offshore L.L.C.'s motion for summary judgment. (Rec. Doc. 121). The motion is unopposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court grants Alliance's motion and dismisses the plaintiff's claim against Alliance with prejudice.

## BACKGROUND

In October 2013, the plaintiff, Donald Batiste, was employed by Quality Construction and Production, LLC as a rigger. He and his crew were working on a construction project on an offshore platform in the Gulf of Mexico that was owned and operated by Arena Energy, LP. Helmerich & Payne International Drilling Company ("H&P") was conducting drilling operations on the platform pursuant to a separate contract with Arena. The plaintiff claims that he was injured on October 26, 2013 while standing on the deck of a vessel engaged in the task of backloading material baskets to the vessel from the platform. He contends that he gave an "all

stop" signal that was ignored by the H&P crane operator and that the crane operator proceeded to set a material basket down on a pipe that was laying on the vessel's deck. In his complaint, the plaintiff alleged that he was injured when the basket's contact with the pipe caused him to be flung into the side of the basket and also caused the pipe to rise up into the air and strike him in the head.

The plaintiff asserted negligence claims against several defendants. In his second supplemental and amending complaint, the plaintiff asserted a claim against Alliance, contending that Alliance and others "were responsible for keeping the vessel steady during the transfers, keeping the deck clear from hazards, and providing a safe work environment." (Rec. Doc. 60 at 2-3). In support of its motion for summary judgment, Alliance admitted that it was the owner and operator of the M/V NICHOLAS, the vessel involved in the incident, but argued that it is entitled to summary judgment in its favor because there is no evidence that Alliance committed any negligent act or omission that contributed to the plaintiff's alleged injuries in any way and no evidence that Alliance is responsible for the negligence of any other party. The plaintiff did not oppose Alliance's motion.

<u>**ANALYSIS**</u>

**A.**   <u>**THE SUMMARY JUDGMENT STANDARD**</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to

---

[1]      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]      *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]      *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

demonstrate the existence of a genuine issue of a material fact.[4]   All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

## B.   THE GOVERNING LAW

As explained in a previous ruling (Rec. Doc. 124 at 8-12), jurisdiction in this case is premised on the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA"), and the law of Louisiana, the adjacent state, governs the plaintiff's claims against the defendants other than Alliance.   However, the accident occurred on the deck of Alliance's vessel.   Therefore, it is arguable that the general maritime

---

[4]      *Washburn v. Harvey*, 504 F.3d at 508.

[5]      *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005)

law or negligence principles under the Longshore and Harbor Workers'
Compensation Act should apply.

To state a negligence claim under the general maritime law, a plaintiff must
demonstrate that (1) the defendant owed a duty; (2) the defendant breached the duty;
(3) the plaintiff sustained damages; and (4) the defendant's wrongful conduct caused
the plaintiff's damages.[8] These elements are virtually identical to those for asserting
a negligence claim under Louisiana law. In order to prevail on a negligence claim
under Louisiana law, a plaintiff must establish (1) that the defendant had a duty to
conform his conduct to a specific standard; (2) that he failed to do so; (3) that the
defendant's conduct was a cause-in-fact of the plaintiff's injuries; (4) that the
defendant's conduct was a legal cause of the plaintiff's injuries; and (5) that the
plaintiff sustained actual damages.[9]

Under Section 905(b) of the Longshore and Harbor Workers' Compensation
Act ("LHWCA"), a vessel owes three narrow legal duties to independent contractors
working on the vessel: the turnover duty, the active control duty, and the duty to

---

[8]    *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010); *In re Cooper/T Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

[9]    *Hanks v. Entergy Corp.*, 2006-477 (La. 12/18/06), 944 So.2d 564, 579.

intervene.[10]  Although these duties were formulated in the context of the duties of vessel owners and stevedores, they are applied in suits by LHWCA-covered employees of independent contractors working on board vessels.[11]

## C.   THERE IS NO EVIDENCE THAT ALLIANCE BREACHED A DUTY OR CAUSED THE ACCIDENT

It is undisputed that Alliance was the owner and operator of the M/V NICHOLAS, and that the vessel was time chartered to Arena pursuant to an agreement brokered by Kilgore Offshore, Inc.  Pursuant to the time charter agreement, Alliance also provided a captain and crew for the vessel.  It is undisputed that the M/V NICHOLAS was the vessel involved in the incident underlying this lawsuit.

The undisputed evidence submitted by Alliance in support of its motion is that the seas were not rough and the weather was not an issue on the day of the accident. Benny Withers, the person who was operating the crane at all relevant times, stated in his deposition testimony that the request to move the equipment baskets did not come from the boat captain.  Indeed, there is no evidence that the request originated

---

[10]     *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994) (citing *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981)); *Kirksey v. Tonghai Mar*, 535 F.3d 388, 391 (5th Cir. 2008).

[11]     See *Fontenot v. McCall's Boat Rentals, Inc.*, 227 Fed. App'x 397, 400 n. 2 (5th Cir. 2007) (citing *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 33 n. 6 (5th Cir. 1997)).

with Alliance. Mr. Withers did not remember if the boat had to reposition during the backloading operation. He stated that weather conditions did not play a role in causing the accident, and he stated that the seas did not make the operation unsafe. The plaintiff's deposition testimony was consistent in that he was unaware of any difficulty in holding the boat in position during the backloading operation. David Franks, the on-site supervisor for Quality Construction, the plaintiff's employer, testified that the seas were not rough and the weather was fairly nice. Sim-ops coordinator Gordon Sand similarly testified that the sea was not choppy and the weather was not an issue. No evidence was submitted to suggest that the boat did not maintain its position during the operation or moved in a manner that led to the accident. In sum, no evidence was presented that would support a conclusion that Alliance breached a duty owed to the plaintiff or a conclusion that the acts or omissions of Alliance's employees caused or contributed to the cause of the accident in any way. Accordingly, the court finds that the plaintiff did not establish that Alliance was negligent under the general maritime law or under Louisiana state law.

Similarly, no evidence was presented to support an argument that Alliance breached any of the three *Scindia* duties. The turnover duty requires the shipowner to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert and experienced stevedore can carry on

stevedoring operations with reasonable safety and to warn the stevedore of latent or hidden dangers that are known to the vessel owner or should have been known to it.[12] There is no evidence that the accident occurred because of any problem with the ship that prevented the riggers and the crane operator from conducting the operation safely. Therefore, there is no evidence that Alliance breached this duty.

The active control duty requires the vessel owner to exercise due care to avoid exposing longshoremen to harm from hazards that they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.[13] Again, there is no evidence that the accident occurred because of a hazard that was under the active control of the vessel while the backloading operation was underway. It is clear that Alliance had no role in supervising or planning the backloading operation. There is no evidence that any Alliance employee was involved in that operation other than the vessel captain who merely kept the vessel in position during the operation. Although there was a pipe on the deck of the vessel that allegedly was struck by the basket as it was lowered to the deck, resulting in the plaintiff's injury, the mere presence of the pipe played no role in causing the accident. The pipe was apparent to all who observed the vessel's

---

[12]     *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392 (5th Cir. 2008)

[13]     *Manson Gulf, L.L.C v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017).

deck. Mr. Sand in particular knew it was there and was confident that the operation could be conducted by placing the material basket away from the pipe. The riggers and the crane operator – not the vessel – were in charge of placing the basket on the deck. The crane operator testified that he did not need anyone to give him step-by-step instructions on how to move the material baskets, and the riggers confirmed that they were the final decisionmakers on where and how the baskets were to be positioned on the vessel's deck. There is no evidence that Alliance, the boat's captain, or any other Alliance employee gave any instructions to the crane operator or the riggers with regard to the backloading operation. Therefore, there is no evidence that Alliance exercised active operational control over the backloading operation. This Court finds that Alliance did not breach its active control duty during the backloading operation and was not liable for the negligence of any party who was involved in that operation.

Finally, no evidence was presented that supports a conclusion that Alliance had a duty to intervene in the backloading operation. To trigger the duty to intervene, the plaintiff must show that the vessel owner was actually aware of a dangerous condition and also aware that the stevedore meant to proceed with working despite

the hazard and could not be relied upon to remedy it.[14]  In this case, the backloading operation was a routine operation that the crane operator and the riggers had accomplished on numerous prior occasions.  Mr. Sand knew the pipe was on the deck but thought the operation could be safely conducted.  The riggers and the crane operator all believed the job could be performed safely.  There is no evidence that Alliance or its boat captain could have predicted that the job could not be performed safely.  Therefore, Alliance did not have a duty to intervene.

In summary, there is no evidence that Alliance breached any of the duties it might have owed to the plaintiff due to its ownership of the vessel.  Accordingly, there is no basis for finding Alliance liable for the breach of any such duty.

## **CONCLUSION**

The plaintiff failed to establish that there is a genuine issue of disputed fact concerning the alleged liability of defendant Alliance Offshore, LLC.  Therefore, Alliance is entitled to judgment as a matter of law, and the plaintiff's claims against Alliance will be dismissed with prejudice.  Accordingly,

---

[14]     *Manson Gulf, L.L.C v. Modern Am. Recycling Serv., Inc.*, 878 F.3d at 134.

IT IS ORDERED that Alliance's motion for summary judgment (Rec. Doc. 121) is GRANTED, and the plaintiff's claims against Alliance are DISMISSED WITH PREJUDICE.

Signed at Lafayette, Louisiana on this 9th day of May 2018.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE