UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DONALD BATISTE | CIVIL ACTION NO. 6:14-cv-03045 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| QUALITY CONSTRUCTION & PRODUCTION LLC, ET AL. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Currently pending are the cross-motions for summary judgment that were filed on behalf of Arena Energy, LP and Alliance Offshore, LLC with regard to Alliance's cross-claim against Arena for defense and indemnity. (Rec. Docs. 134 and 140). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, Arena's motion is DENIED, and Alliance's motion is GRANTED.

## Background

In October 2013, the plaintiff, Donald Batiste, was employed by Quality Construction and Production, LLC as a rigger. He and his crew were working on a construction project on an offshore platform in the Gulf of Mexico that was owned and operated by Arena Energy, LP. Helmerich & Payne International Drilling Company ("H&P") was conducting drilling operations on the platform pursuant to a contract with Arena. The plaintiff claims that he was injured on October 26, 2013 while standing on the deck of a vessel engaged in the task of backloading material

baskets to the vessel from the platform. It is undisputed that the vessel was the M/V NICHOLAS C, which was owned by Alliance Offshore, LLC and time-chartered to Arena through an agreement brokered by Kilgore Marine Services, LLC.

The plaintiff contends that he gave an "all stop" signal that was ignored by the H&P crane operator and that the crane operator proceeded to set a material basket down on a pipe that was laying on the vessel's deck. In his complaint, the plaintiff alleged that he was injured when the basket's contact with the pipe caused him to be flung into the side of the basket and also caused the pipe to rise up into the air and strike him in the head.

The plaintiff asserted negligence claims against several defendants, including Arena and Kilgore. Kilgore never answered the complaint, and the plaintiff amended his complaint to substitute Alliance for Kilgore. (Rec. Doc. 60). Arena filed a motion for summary judgment, which was granted, and the plaintiff's claims against it were dismissed with prejudice. (Rec. Docs. 126, 127). Similarly, Alliance filed a motion for summary judgment, which was granted, and the plaintiff's claims against it were dismissed with prejudice. (Rec. Docs. 136, 137). The plaintiff's claim against H&P was settled.

The instant motions both address Alliance's cross-claim against Arena for defense and indemnity. (Rec. Doc. 75). Alliance argued that the provisions of the

time charter agreement entitle it to defense and indemnity from Arena, while Arena argued that Alliance is not entitled to contractual defense or indemnity.

## Analysis

### A. The Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3] If the moving party carries its initial burden, the burden shifts to the nonmoving party to

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

demonstrate the existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

**B.     Maritime Law Governs Alliance's Cross-Claim**

As explained in previous rulings, subject-matter jurisdiction in this case is premised on the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA"). But a finding that the court has OCSLA jurisdiction does not determine the law that must be applied by the court in resolving the parties' disputes. Here, the parties agree that general maritime law applies to the contract at issue. An agreement to transport people and supplies in a vessel to and from an offshore drilling rig is a maritime contract, and the construction of a maritime contract is governed by

---

[4]     *Washburn v. Harvey*, 504 F.3d at 508.

[5]     *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6]     *Norwegian Bulk Transport A/S v. Internat'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7]     *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

maritime law.[8] Additionally, the time charter agreement at issue in this case expressly states that it "shall be construed in accordance with the admiralty and maritime laws of the United States of America." (Rec. Doc. 134-2 at 11).

C. **Principles of Contract Law Apply**

Charter party agreements, such as the master time charter agreement in this case, are contracts subject to the general rules of contract law.[9] The interpretation of an indemnity provision in a maritime contract is ordinarily governed by federal maritime law.[10] It is also a matter of law.[11] Under maritime law, "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage."[12] "A maritime contract should be read as a whole, and a court should not look beyond the

---

[8] *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231 (5th Cir. 1985).

[9] *Marine Overseas Services, Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1234 (5th Cir. 1986).

[10] *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981).

[11] *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009).

[12] *Fontenot v. Mesa Petroleum Co.*, 701 F.2d 1207, 1214 (5th Cir. 1986) (quoting *Corbitt v. Diamond M Drilling Co.*, 654 F.2d at 333).

written language of the contract to determine the intent of the parties unless the disputed language is ambiguous."[13] The words used in a maritime contract should be given their plain meanings unless the provision is ambiguous.[14] To the extent possible, all terms used in the contract should be interpreted, without rendering any of them meaningless or superfluous.[15] "A contract is unambiguous if its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation."[16]

D.     **Interpretation of The Master Time Charter Agreement**

Alliance seeks defense and indemnity from Arena under the terms and provisions of the master time charter agreement, dated January 12, 2005, which was "entered into. . . between Kilgore Offshore, Inc. (hereinafter referred to as "OWNER"), and ARENA OFFSHORE, LLC., its subsidiaries and affiliates (hereinafter collectively referred to as 'CHARTERER.')." (Rec. Doc. 134-2 at 1). After the agreement was confected, a short form charter agreement was executed

---

[13]     *Channette v. Neches Gulf Marine, Inc.*, 440 Fed. App'x 258, 260 (5th Cir. 2011) (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d at 1214).

[14]     *Becker v. Tidewater, Inc.*, 586 F.3d at 369.

[15]     *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

[16]     *Channette v. Neches Gulf Marine, Inc.*, 440 Fed. App'x at 260 (quoting *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d at 555 n. 6).

between Arena and Kilgore on October 11, 2013, in which the M/V NICHOLAS C[17] was chartered to work for Arena pursuant to the terms and provisions of the January 12, 2005 master time charter agreement. (Rec. Doc. 134-3 at 1). Although Kilgore is shown as the owner of the vessel in both the short form agreement and in the master time charter agreement, it has been established in this litigation that Kilgore did not actually own the M/V NICHOLAS C. Instead, that vessel was actually owned by Alliance, and Kilgore acted as a broker for Alliance in chartering the vessel to Arena.[18]

The contract provision that both Alliance and Arena rely upon reads as follows, in pertinent part:

> Neither OWNER [Kilgore], its officers, directors, employees, the vessel, her owners, operators, master, and crew, nor the underwriters of any of the foregoing shall have any responsibility or liability for any claim involving damage to or loss of any property or equipment of Charterer, or CHARTERER'S [Arena's] other contractors, or their cargo and/or equipment carried by the vessel, or for any injury, illness, disease or death of employees of CHARTERER [Arena], its other contractors, or their employees or agents, and CHARTERER [Arena] shall defend, indemnify, and hold harmless OWNER [Kilgore], its officers, directors, employees, the vessel, its owners, operators, master, and crew, and the underwriters of each of the foregoing from and against any such claim, whether groundless or not, and whether caused

---

[17] In some pleadings, the vessel was referred to as the M/V NICHOLAS rather than the M/V NICHOLAS C. Because the short form time charter agreement refers to the vessel as Nicholas C, that name will be used in this ruling.

[18] This Court previously found that "[i]t is undisputed that Alliance was the owner and operator of the M/V NICHOLAS, and that the vessel was time chartered to Arena pursuant to an agreement brokered by Kilgore Offshore, Inc." (Rec. Doc. 136 at 6).

7

in whole or in part by the negligence or faults of indemnities or by unseaworthiness of the vessel or equipment of OWNER [Kilgore], OWNER'S [Kilgore's] property and OWNER'S [Kilgore's] subcontractor's employees or property.[19]

It is undisputed that the plaintiff was an employee of Quality Construction, which was one of Arena's subcontractors. Therefore, his claim is a claim for injury to an employee of one of the Charterer's other contractors that falls within the parameters of the indemnity provision.

Arena argued that the quoted contract provision should be interpreted in the same way that the Fifth Circuit interpreted a time charter agreement in *Channette v. Neches Gulf Marine, Inc.*[20] There, as in this case, the vessel that was chartered was not actually owned by the party that was designated in the contract as "OWNER;" instead, the vessel broker was identified as "OWNER." The court found that the contract bound only the parties defined in the contract as "OWNER" and "CHARTERER" and further found that "CHARTERER" did not owe indemnity to the vessel's actual owner. The court was persuaded that the contract did not require the "CHARTERER" to indemnify the actual vessel owner because the actual owner was neither a named party nor a signatory to the time charter agreement.

---

[19] Rec. Doc. 134-2 at 7.

[20] *Channette v. Neches Gulf Marine, Inc.*, 440 Fed. App'x 258 (5th Cir. 2011).

8

Alliance argued, however, that *Channette* is substantially different from this case because the master time charter agreement before the court in this case creates a class of entities to whom indemnity is owed – including the vessel's "owners, operators, master, and crew," while there is no evidence that the indemnity provision interpreted in the *Channette* case contained a provision requiring that the "CHARTERER" indemnify a class of entities in addition to the sole entity expressly identified in the agreement as "OWNER." Alliance is correct that the Fifth Circuit's *Channette* decision does not quote the indemnity provision or otherwise evidence the creation of a class of indemnitees in the body of the agreement at issue. However, the underlying district court decision does quote the indemnity provision, which states that "CHARTERER shall indemnity [sic], defend and hold OWNER and the Vessel harmless from and against any and all claims. . . ."[21] Because the language used in the two indemnity provisions is different, this Court cannot conclude that *Channette* is controlling.

Alliance argued that the indemnity provision in the contract between Arena and Alliance is broader than the one at issue in *Channette*, requiring a different interpretation. More particularly, Alliance argued that the words used in the contract's indemnity provision created a class of entities to whom defense and

---

[21] *Channette v. Evans Operating Co.*, No. 09-0202, 2010 WL 3154588, at *5 (W.D. La. Aug. 9, 2010), affirmed 440 Fed. App'x 258 (5th Cir. 2011).

9

indemnity was owed by Arena.  Alliance cited several cases in which courts found that indemnity was owed to entities who were not signatories to contracts creating indemnity obligations but were members of a class identified in the contracts.

The indemnity provision in the master time charter agreement between Kilgore and Arena states that "CHARTERER shall defend, indemnify, and hold harmless OWNER, its officers, directors, employees, the vessel, its owners, operators, master, and crew. . . ."  Unlike the indemnity provision construed in *Channette*, the indemnity provision in this case does not require the charterer to indemnify only the entity designated in the contract as "OWNER."  Instead, the indemnity provision clearly and unambiguously requires Arena to indemnify Kilgore because it is designated as the "OWNER" in the contract and to indemnify Alliance because it was the "owner" and "operator" of the vessel at relevant times.

The language used in the indemnity provision clearly obligates Arena to indemnify the members of two different groups.  Arena must indemnify "OWNER [Kilgore], its officers, directors, [and] employees," and it must also indemnify "the vessel, *its* owners [Alliance], operators [Alliance], master, and crew."  A clear distinction is made between the word "owner" when it is capitalized and the word "owner" when it is written in lower-case letters and used in connection with the vessel.  The capitalized word "owner" refers solely to Kilgore, while the lower-case word "owner," preceded by the words "the vessel, its" refers to any party established

as being the owner of the vessel. In this case, there is no dispute that Alliance owned the M/V NICHOLAS C at all material times and, consequently, is among the "owners" referred to when the word is printed in lower-case letters.

Any other interpretation of indemnity provision would require the words "the vessel, *its owners, operators*" to be ignored. Doing so would violate a cardinal rule of contract interpretation, which requires that all terms used in the contract should be given meaning and, consistently, that no terms used in the contract should be rendered superfluous. The only way to read the indemnity provision without ignoring the words "the vessel, its owners, operators, master, and crew," is to find that Arena owes indemnity to Alliance because it was both the owner and operator of the vessel at the time of the plaintiff's alleged injury.

Another rule of contract interpretation is potentially implicated. That rule requires that a word used in one sense in one part of a contract is presumed to retain that same meaning throughout the contract.[22] In the master time charter agreement, the words "owner" and "OWNER" were both used. But interpreting the indemnity provision as requiring Arena to indemnify Alliance will not violate that rule because the words "owner" and "OWNER" are used differently in the agreement. When set

---

[22] *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 657 (5th Cir. 1999). Cf. *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (mentioning the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning (quotation marks omitted; citations omitted)).

11

off in quotation marks and capitalized following Kilgore's name in the contract's introductory paragraph, the word "OWNER" became a term of art with a single meaning, referring solely to Kilgore. Without the capitalization, however, the word "owner" retained its common and customary definition. Therefore, when the indemnity provision referred to both "OWNER" and "owners" in the same sentence, it referred to two different entities – "OWNER" meant only Kilgore and "owners" meant whatever persons or entities actually owned the M/V NICHOLAS C.

However, even if the terms "OWNER" and "owners" did not have different meanings, the result would be the same. The indemnity provision requires that Arena indemnify not just the vessel's owners but also its operators. It is undisputed that Alliance was operating the vessel at relevant times. Therefore, irrespective of any potential confusion in the contract's use of both the term "owners" and the term "OWNER," indemnity would have to be extended to Alliance because it was the vessel's operator even if it were not the vessel's owner.

Accordingly, this Court concludes that Arena is obligated to defend and indemnify Alliance under the plain and unambiguous language of the master time charter agreement.

**Conclusion**

Having found that the relevant indemnity provision in the master time charter agreement between Kilgore and Arena requires Arena to defend and indemnify Alliance with regard to the plaintiff's claimed injury,

IT IS ORDERED that Arena's motion for summary judgment with regard to Alliance's cross-claim against Arena for defense and indemnity (Rec. Doc. 134) is DENIED, and Alliance's motion for summary judgment with regard to its cross-claim against Arena for defense and indemnity (Rec. Doc. 140) is GRANTED.

Signed at Lafayette, Louisiana, this 9th day of July 2018

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE